# Pennsylvania State Athletic Commission v. Moran

*Joseph C. Mansfield, Elmer T. Bolla,* Deputy Attorneys General, *Herbert B. Cohen,* Attorney General, for Pennsylvania State Athletic Commission.

*Garfield W. Levy, Levy & Oliensis,* for appellant.

SOHN, J., February 29, 1956.—We have for consideration in this case an appeal by Pete Moran from an adjudication and order of the Pennsylvania State Athletic Commission revoking appellant's licenses as matchmaker and promoter.

The original citation against appellant was issued by the Pennsylvania State Athletic Commission on May 13, 1955, charging appellant with failing and neglecting to make known to the commission or its authorized representatives the fact that boxer Harold Johnson was unfit to proceed with a boxing match against Julio Mederos, held at Philadelphia, on May 6, 1955, and in violation of section 15 of the Act of June 14, 1923, P. L. 710, as amended, with conduct "detrimental to the interests of boxing". Appellant was cited to appear at a hearing fixed for May 16, 1955, at the Pennsylvania State Athletic Commission's office in Philadelphia, to show cause why appellant's licenses as matchmaker and promoter should not be suspended or revoked under section 15 of the Act of June 14, 1923, P. L. 710, as amended, and in accord-ance with the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended.

On May 16, 1955, by stipulation of counsel for appellant, the original citation against appellant was orally amended to add the charge that appellant violated section 13 of the Act of June 14, 1923, P. L. 710, as amended, relating to the prohibition against having any financial interest in any boxer under certain con-

ditions, and that appellant violated section 14 of the same act relating to sham or collusive exhibitions, and further that appellant violated section 17 of the rules and regulations of the commission requiring persons who represent boxers to have managers' licenses. On May 23, 1955, the amended citation against appellant was reduced to writing and delivered to appellant's counsel.

The citation by the Pennsylvania State Athletic Commission against appellant was occasioned by the physical collapse of boxer Harold Johnson at the conclusion of the second round of his scheduled boxing match with Julio Mederos on May 6, 1955, at the Philadelphia Arena, which was promoted by Herman Taylor, trading as Herman Taylor Sports Enterprises, of Philadelphia. Appellant Moran was an employe of the Herman Taylor Sports Enterprises in the capacity of matchmaker. A series of hearings were held, commencing May 16th and ending June 7, 1955. There was a total of nine full days of hearings. Appellant, who was represented by counsel, appeared at the hearings and testified in his own behalf.

On July 6, 1955, the commission entered its adjudication and order in these proceedings. As to appellant Moran, the commission found that he was not sufficiently aware of Johnson's condition to charge him with any culpability with respect to the charges brought against him on this count, and held that Moran owed no duty to the public, or the commission, to advise the commission of Johnson's condition. The commission further held that appellant had not violated section 14 of the act having to do with sham or collusive exhibitions, and dismissed this charge. The commission, however, did conclude that Moran was guilty, as charged, with having violated sections 13 and 15 of the act, as well as section 17 of the rules and

regulations of the commission pertaining to boxing. The commission accordingly ordered that the match-maker's license and the promoter's license issued to appellant should be revoked. This appeal then followed.

In an opinion filed in this court on February 14, 1956, in the matter of the appeal of Thomas Loughran from the adjudication and order of the Pennsylvania State Athletic Commission suspending his manager's license, we held that section 15 of the Act of June 14, 1923, P. L. 710, as amended, was constitutional. Inasmuch as we have set forth in that opinion our reasons for so declaring, we will not repeat them here. We also have before us in this appeal a question concerning the constitutionality of section 13 of the aforesaid Boxing Act. This section provides:

"Section 13. Financial Interest in Boxer Prohibited. —No corporation or person shall have, either directly or indirectly, any financial interest in any boxer or wrestler competing on premises owned or leased by the corporation or person or in which such corporation or person is otherwise interested."

The commission has found that appellant violated this section. There can be no doubt as to the meaning of "financial interest" as used here—clearly it pertains to a money interest, a financial investment or derived gain, an expectation of a money reward. Webster's New International Dictionary, Second Edition, defines "financial" as: "Pertaining to finance . . . Financial is used of money matters in general." We believe the words mean just what they say. The phrase "otherwise interested" clearly refers to an interest in the premises on which the boxing match takes place. The obvious intent of the legislature was to prevent any person having any financial interest in a boxer from having simultaneously any direct or indirect interest in the premises where such boxer fights. So that if appellant had a financial interest in Johnson,

as the athletic commission found, section 13 prohibits him from being the owner or lessee of the premises where Johnson boxed, or from being "otherwise interested" in such premises. This clearly would include any of appellant's compensation from Herman Taylor Sports Enterprises, where that compensation depended upon the size of the arena and the amount of the gate receipts.

Section 15, which we have in another opinion held to be constitutional, provides that the commission may revoke or suspend any license provided for in the act, after hearing, if the commission finds that the licensee has "been guilty of an act detrimental to the interests of boxing". Webster's Collegiate Dictionary, Fifth Edition, defines "detrimental" as: "Causing detriment; hurtful. Syn.—Pernicious, deleterious, harmful"; "detriment" is defined as "Injury or damage, or that which causes it; mischief; hurt."

The violation of section 13 of the act, as above set forth, is certainly not in the interests of boxing, and to the contrary, is detrimental to it.

Appellant has further urged upon us that the act is unconstitutional as an unauthorized delegation of legislative power. The fact is that there has been no delegation of power whatsoever. The commission did not of its own motion revoke appellant's license without any reference to any legislative standard. What the commission did was to find, after hearing, that certain facts existed, which established that appellant was guilty of an act detrimental to the interests of boxing. There was sufficient evidence to support this particular finding. It was the act of the legislature itself which provided for the revocation of appellant's license.

Appellant further contends that the commission had no power to revoke his license for a violation of section 13 of the act or for a violation of the rules and regu-

lations of the commission. This contention is obviously immaterial as the commission did no such thing. The commission clearly had power to revoke appellant's license for the violation of section 15 of the act, which it found had occurred. The violation of any section of the act, or of any of the rules and regulations of the commission, would manifestly be an act detrimental to the interests of boxing, for which appellant's license could be revoked under section 15.

It has likewise been argued that the commission was not authorized to promulgate section 17 of the rules and regulations of the commission. Section 1 of the act, as amended by the Act of May 18, 1945, P. L. 634, 4 P.S. §1, provides:

"Section 1. . . . The commission, in its discretion, is authorized to make and promulgate rules and regulations not inconsistent with any of the provisions of this act, as amended."

Section 17 of the rules and regulations provides that any person who represents a boxer must have a manager's license and also must have the names of all boxers whom he represents on file in the office of the commission, together with a written consent from the manager of the boxer, authorizing such person to do business for them. It is clearly apparent what the purpose of this regulation is. It is simply to insure that the commission may properly control the sport of boxing and may prevent undesirable persons from conducting the actual representation of boxers through the device of a manager who is in fact a manager in name only. Without such a regulation, the entire scheme and purpose of the act could easily be defeated. The regulation is entirely consistent with the act and is well designed to effectuate its purposes.

We now come to the question whether or not there was sufficient evidence to support the findings of the

commission with respect to appellant. The State Athletic Commission in its adjudication found that Moran had violated section 17 of the rules and regulations of the commission which we have just quoted. The commission also found that appellant violated section 13 of the act, which prohibited any person from having a financial interest in a boxer competing on premises owned or leased by the said person, or in which premises said person was otherwise interested.

The evidence upon which these findings were based can be summarized as follows: Appellant admitted that he received money from Thomas Loughran, the manager of record for Harold Johnson, for services which he rendered in connection with fights engaged in by Harold Johnson. Appellant also admitted that when he went out of the city of Philadelphia in connection with a Johnson fight, he picked up Johnson's share of the purse, that the purse was payable mostly by check drawn to the order of the fighter and that Harold Johnson signed the checks and he, appellant, brought back the cash to Philadelphia. With respect to certain specific boxing matches, appellant testified that he accompanied Harold Johnson and rendered services to him. Appellant also admitted that there was no percentage arrangement with Thomas Loughran for getting paid when he rendered services to Johnson, and that Loughran gave him whatever he thought was proper. In addition, appellant testified that he was paid by Herman Taylor Sports Enterprises, according to each boxing match, and that he did not receive a percentage or straight salary. It was Mr. Herman Taylor who determined what amount of money he would receive. Appellant likewise testified that Johnson was the only fighter for whom he rendered services outside of the State of Pennsylvania and the only fighter he accompanied out of the City of Philadelphia. Moran also admitted that he

represented Loughran on behalf of Johnson, and that he did not have on file in the office of the State Athletic Commission a written consent from Johnson's manager of record, Thomas Loughran, to represent Johnson.

In addition to these admissions on the part of appellant himself, the record discloses the testimony of Thomas Loughran, the manager of record of Harold Johnson. He testified that Moran, together with Clarence (Skinny) Davidson and Joe Rowland, trainers, and himself operated as part of a team "to bring Johnson along". Loughran also testified that when Harold Johnson had fights out of the City of Philadelphia, he asked Pete Moran to look after Johnson's interest. He also admitted that he paid Moran money following the Johnson-Charles fight held in Philadelphia. This witness further said that following the last fight which Harold Johnson had in Chicago, appellant brought him the cash after the fight, that the check representing the purse from the fight was made out in Loughran's name, and that appellant, Moran, signed Loughran's name to the check. Furthermore, Loughran said that appellant arranged the Harold Johnson-Archie Moore fight in Toledo, Ohio. When Harold Johnson fought Satterfield in Chicago, this witness further testified that appellant, Moran, made all the arrangements for the bout, that Moran accompanied Johnson and Davidson to Chicago and looked after Loughran's money affairs, sparring partners and gymnasium, and that appellant used Loughran's transportation ticket. With respect to the Harold Johnson-Julio Mederos fight in Miami, Loughran testified that appellant, Moran, accompanied Johnson and Davidson to Miami and that appellant took care of the hotel arrangements and the training partners. It was further testified by Loughran that appellant prepared the statements of distribution of the purses for Johnson's fights and that he left everything in charge of

Moran, that Johnson and he picked up their money after a fight from appellant at appellant's office.

Clarence Davidson, who was a trainer for Harold Johnson, testified that appellant, Moran, was present when the first contract was signed between Harold Johnson and Thomas Loughran. He further said that Moran was present at nearly all of the fights in which Harold Johnson participated, that sometimes he would be on the same train with Johnson and Davidson, or would meet them at the gym or club, and that he received instructions from either Loughran or Moran concerning out of town boxing matches, and that appellant, Moran, would use Loughran's transportation ticket when Loughran did not use it. This witness also said that on every occasion following a Johnson fight, he was paid by Pete Moran at Pete Moran's office. Davidson also said that Pete Moran, Loughran and he were each getting 10 percent out of the purse from Harold Johnson's boxing matches. On one occasion, Davidson said that Moran told him Davidson was getting as much money as he was from Johnson's purses.

Emily Delaney, secretary of the Herman Taylor Sports Enterprises, testified that appellant was paid according to each fight staged by the Herman Taylor Sports Enterprises, that in the year 1952, appellant was paid by Herman Taylor Sports Enterprises the following sums of money: January, $200; February, $1,100; March, $700; April, $250; June, $1,250; July, $1,000; September, $100; October, $200; November. $300; December, $300.

When Herman Taylor, promoter, who does business under the name of Herman Taylor Sports Enterprises, was called as a witness, he said that he paid appellant, Moran, what he thought Moran was entitled to, according to each boxing bout. This witness admitted that following the championship fight held in Phila-

delphia between Joe Walcott and Rocky Marciano, in June of 1952, he paid Pete Moran $1,250, and that one of the considerations which determined the amount of money appellant received was the size of the gate.

This summary of the testimony shows that the commission had a perfect right to conclude that appellant represented the boxer, Harold Johnson, in connection with Thomas Loughran, that appellant did not have a manager's license and did not have on file the name of boxer Harold Johnson whom he represented, and that he had no written consent from Thomas Loughran, the manager of record of Harold Johnson, all of which was in violation of section 17 of the rules and regulations of the commission, and which certainly was conduct or an act detrimental to the interests of boxing under section 15 of the act. The commission properly concluded also that appellant had a financial interest in Harold Johnson and was also financially interested in the premises where the Johnson-Mederos boxing match took place on May 6, 1955. Appellant himself was the matchmaker for the May 6th bout and an employe of the lessee of the premises, Herman Taylor. Moran's compensation from Taylor depended upon the receipts from the gate, which necessarily depended on the premises where the match was held. We, therefore, conclude that the findings of fact and conclusions of law, as set forth in the adjudication and order of the Pennsylvania State Athletic Commission, were in all respects correct. We make the following

## Order

And now, February 29, 1956, all of the exceptions filed by appellant, Pete Moran, are hereby dismissed and the act of the Pennsylvania State Athletic Commission in revoking his licenses as matchmaker and promoter is sustained and the appeal dismissed.